UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDY SUGAR,<br><br>                      *Plaintiff*,<br><br>v.<br><br>GREENBURGH ELEVEN UNION FREE SCHOOL DISTRICT and ELTON THOMPSON, in his Individual Capacity,<br><br>                      *Defendants*. | Case No. 7:18-cv-00067-VB<br><br>**DECLARATION OF<br>ELTON THOMPSON** |

**ELTON THOMPSON**, under penalties of perjury, hereby declares pursuant to 28 U.S.C. § 1746:

1. I am the Principal of The Mary McLeod Bethune Junior/High School also known as the "Bethune Learning Community High School") (the "School") of the Greenburgh Eleven Union Free School District (the "School District"), and a defendant in this action, and as such am fully familiar with the facts and circumstances of this matter.

2. I submit this Declaration in support of Defendants' motion to dismiss the Complaint in the above-referenced action with prejudice.

3. My background and experience in education is set forth in my resume annexed as Exhibit "A" to this Declaration.

4. Under the School District's Code of Conduct, I am responsible for interfacing with the School District's administration in connection with the implementing policies and regulations in order to facilitate a positive, nurturing environment at the School District that assists in fostering students to grow, learn, and develop psychologically, physically, and

educationally.

5. The School is unique in that it provides a diverse education for troubled youth. Greenburgh Eleven's students present with a wide range of serious deficits, including autism, emotional disturbances, severe acting-out behaviors, speech or language impairments, traumatic brain injuries, and alcohol or substance abuse. Some students have been involved with the Juvenile Justice System.

6. The School aims to teach every student educational excellence that will help students achieve their full potential intellectually, physically, socially, morally and culturally.

### The Plaintiff

7. Effective October 28, 2014, plaintiff, Judy Sugar ("Plaintiff" or "Sugar"), was hired as a certified per diem substitute teacher at the School District "as needed, to serve at the discretion of the Superintendent of Schools or the Board of Education." She was hired to cover the class of the tenured teacher of record who was on a temporary leave of absence. As such, she was expected to strictly adhere to the school's procedures and standards due to the substantial risk one may pose to the troubled youth if they veered from these internal policies and expectations.

### Plaintiff's Performance

8. During the time of Plaintiff's teaching in the School, and prior to the alleged incident in issue, I had reasons to question Plaintiff's professional judgment and effectiveness as a classroom teacher in a high school devoted to youth with severe behavioral problems and trauma exposed backgrounds.

9. The School has strict rules prohibiting teachers from being alone in a classroom with a student.

10. I am aware of an occasion where school and agency staff began searching for a missing student at the close of the school day, who it was feared had run away. After an intense collective coordinated search by various parties about the campus and the surrounding area, the student was discovered in Plaintiff's classroom. Not only was Plaintiff alone in the classroom with the student for at least 45 minutes, in violation of the School District's policies and practices, but Plaintiff also failed to let anyone know the student was there after the end of the school day. That led to the District implementing its "AWOL" protocol. Plaintiff alleged that the student fell asleep in her classroom, and she did not want to wake him up.

11. I counseled Plaintiff at that time about the need to follow school policies and not to be alone with a student.

12. In addition, I received complaints from several students and Teaching Associates in Plaintiff's class concerning Plaintiff's ineffectiveness as a teacher. Teacher Associates complained that Plaintiff "taught to the blackboard", talking while facing the board without paying attention to what was going on behind her in the class. Students also complained that the lack of discipline and classroom structure in Plaintiff's class was interfering with their ability to engage and interact as a class, impacting the learning experience daily. I and the lead teacher, Ms. Monica Carman ("Ms. Carman") spoke with Plaintiff about these concerns, but her teaching methods did not change. It appeared that Plaintiff was afraid of the students and could not credibly interact with them or manage her class, despite the support that I and others gave her.

## The Incident in Issue

13. I have reviewed Plaintiff's complaint in which she alleges that a student exposed himself and inappropriately touched her on or about May 14, 2015. There was no witness to this incident, which the student in question denied occurred. When I asked the Plaintiff if she in fact

saw any private/personal parts of the student, she replied that she did not see anything.

14. Contrary to the District Policies, once this incident allegedly happened, Plaintiff did not report this incident to me. Instead, she spoke to a number of other colleagues who were fellow teachers. Only thereafter did she speak with me about the incident. In fact, Plaintiff's complaint itself states "at the earliest opportunity" she reported the conduct to me.

15. It is my understanding that Plaintiff did speak with the School's lead teacher Ms. Carman, who I am informed told Plaintiff to notify me so that I could look into the situation.

16. When this type of violation of the School's Code of Conduct occurs, the School must notify the student's Children's Village Social Worker at the student's residential on-campus cottage. If possible, the student's parents are also notified. I also commence an immediate investigation, which is designed to ensure the safety of students and staff, as well as protect the student's due process rights. Part of my duties is to determine whether to involve law enforcement immediately. (However, District Policy does provide for calling 911 in the event of an emergency.)

17. When the lead teacher, Ms. Carman advised me about Plaintiff's complaint, she also spoke with me about Plaintiff's desire to call the police.

18. After speaking with Ms. Carman, I went to look for Plaintiff to discuss things with her. I went down the hall and stood outside the door of the geometry classroom in which the teacher, who was a union representative of the School, had stopped his instruction and commenced to engage in a conversation with Plaintiff as students sat waiting. I heard Plaintiff discussion the incident in front of a classroom full of students. I walked in and advised Plaintiff that this was not the appropriate time to be discussing this issue, in front of students in the middle of a class. Plaintiff abruptly left that classroom. I instructed Plaintiff to discuss the issue

with the lead teacher, but not to interrupt other classes. I directed Plaintiff to report the incident to the police after class as there was no one to cover her classes until 3:15 p.m. when the school day ended.

19. I believe Ms. Carman also told her to go to the police station after class to report the incident.

20. Due to the trauma induced backgrounds of several students, I am meticulous with how we partner with law enforcement in terms of addressing issues and/or engaging with our students. Our students have experienced a great deal of trauma, bringing the police into the school can easily trigger numerous students to exhibit extreme behaviors leading to full out crisis situations due to trauma triggers. Some students would act out due to perceived fear that the police were coming to arrest them again, interfering with the therapeutic community we are attempting to foster so that the students can learn. Indeed, a number of our students successfully take New York State Regents exams and go on to college despite their previous harsh backgrounds.

## The Alleged Safety Issue

21. Plaintiff alleges that she wanted to call the police out of concern for the safety of

"a recently hired female teacher who was young, attractive and of smaller stature." However, Plaintiff fails to mention that the Teacher Associates accompany students to that class is a highly experienced Teacher's Associate who is approximately 5"9' tall and weighs approximately 225 pounds. Also there are school monitors and safety agents positioned in the hallways on every level of the building who patrol the halls and provide direct behavioral and safety support to the classrooms. No imminent safety risk existed.

### Plaintiff's Termination

22. Given Plaintiff's ineffective teaching and poor professional judgment including, her interrupting a class to discuss this alleged incident in front of students, her failure to reach the students and teach them, and her inability to maintain control of her class, she was terminated for ineffective teaching shortly before the end of the school year.

23. At approximately the same time, in May 2015, Defendant learned that the permanent teacher, whose leave led to the hiring of Plaintiff as a substitute, would be returning to the School for the coming school year.

24. Nothing was placed in a public record that would in any way stigmatize Plaintiff. In fact, the only mention of the reason for her termination is contained on the State form filed in response to her unemployment claim.

*Elton Thompson*
Elton Thompson