UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JUDY SUGAR,                                        :
                            Plaintiff,           :
v.                                                 :
                                           :  **OPINION AND ORDER**
GREENBURGH ELEVEN UNION FREE              :
SCHOOL DISTRICT and ELTON                 :  18 CV 67 (VB)
THOMPSON, in his individual and official  :
capacities,                               :
                            Defendants.          :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Judy Sugar brings this Section 1983 action against defendants Greenburgh Eleven Union Free School District (the "District") and Elton Thompson, principal of Mary McLeod Bethune Junior/Senior High School (the "School"), alleging violations of her First and Fourteenth Amendment rights.

       Before the Court is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #31).

       For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

       The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

       For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

1

In October 2014, the District hired plaintiff as a long-term substitute teacher at the School.[1] Although she was a substitute teacher, plaintiff performed all the duties of a tenured full-time teacher. After plaintiff's hiring, Thompson spoke with her about her "anticipated continuation" as a long-term substitute teacher during the 2015–16 school year. (Am. Compl. ¶ 11).

According to the amended complaint, before the incidents in suit, plaintiff alerted Thompson to potential dangers plaintiff believed were posed by a student referred to as "Student X." Plaintiff told Thompson that Student X's needs and Student X's potential danger to plaintiff's and other students' safety necessitated intervention. Thompson allegedly ignored plaintiff's concerns.

On May 14, 2015, while plaintiff bent over a microscope, Student X allegedly approached plaintiff from behind with his genitals exposed. He contacted plaintiff's leg and buttocks with his penis and immediately fled.

Plaintiff considered Student X's actions to be criminal conduct that posed a threat to School students and faculty. She reported Student X's behavior to Thompson as quickly as possible. Thompson allegedly left their conversation without taking action.

District policy renders Thompson, as School principal, or Thompson's designee, solely responsible for contacting law enforcement respecting criminal conduct at the School or a threat to the School community. District policy forbids other faculty from contacting law enforcement about such matters during the school day. Plaintiff's duties never included contacting law enforcement, nor did she ever serve as Thompson's designee for that purpose.

---

[1] The Court takes judicial notice of the fact that the School serves students with special needs. See Fed. R. Evid. 201(b).

After speaking with Thompson, plaintiff expressed her safety concerns to a head teacher. Plaintiff told the head teacher Student X was in a music class in an isolated classroom with a young, attractive female teacher whose safety plaintiff believed might be threatened. The head teacher allegedly dismissed and disregarded plaintiff's concerns.

Plaintiff next spoke with Student X's caseworker and social worker, who advised plaintiff "to do whatever she needed to do [to] address her safety concerns." (Am. Compl. ¶ 22).

According to the amended complaint, after advising the head teacher she intended to do so, plaintiff called the police and reported Student X's behavior. Plaintiff alleges the head teacher claimed she had also called the police regarding Student X's conduct.[2] Pursuant to District policy, the head teacher told plaintiff she should not speak with police until after the school day ended.

Thompson allegedly "expressed his disapproval" of plaintiff's actions after learning plaintiff had reported Student X to the police. (Am. Compl. ¶ 28). "Almost immediately thereafter," Thompson directed plaintiff to leave the School grounds and told plaintiff she would be contacted concerning her employment. (Id. ¶ 29).

Plaintiff went to the police station later that day and again reported Student X's conduct, this time in person. A police officer told plaintiff officers had tried to respond to the School after plaintiff's phone call, but School staff refused them entry and told them plaintiff would file a report after the school day.

The next day, Student X was arrested and an order of protection was issued barring Student X from contacting plaintiff.

---

[2] Plaintiff claims a police officer later told plaintiff hers was the only call the police received from the School about the incident.

On May 19, 2015, five days after plaintiff reported Student X's alleged misbehavior to the police, Thompson terminated plaintiff for purported "ineffective teaching" (Am. Compl. ¶ 33), citing unspecified student and faculty complaints. Defendants placed documentation of plaintiff's alleged ineffectiveness in her personnel file. Plaintiff alleges this likely will impede her future employment prospects.

According to plaintiff, Thompson's assertion that plaintiff was an ineffective teacher is false. Plaintiff alleges the real reason for her termination was her unauthorized contact with the police during the school day concerning Student X, in violation of District policy.

Plaintiff alleges defendants violated her constitutional rights by terminating her in retaliation for exercising her right to free speech under the First Amendment—namely, reporting Student X's misbehavior to the police during the school day—and by depriving plaintiff of a liberty interest in violation of the Fourteenth Amendment.

**DISCUSSION**

I.  Legal Standards

    A.  Rule 12(b)(6)

In deciding defendants' Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

A court assessing a Rule 12(b)(6) motion "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Courts also may consider documents deemed "integral" to the complaint, id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)), and any matters subject to judicial notice, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (citation omitted).

B.  Rule 12(d)

In arguing for dismissal, defendants rely extensively on evidentiary materials they submitted with their motion: declarations of nonparty District Superintendent of Schools Anthony Gyetua-Danquah (Doc. #33), nonparty Lead Teacher Monica Carman (Doc. #34), and defendant Thompson (Doc. #36), along with numerous supporting exhibits. (Docs. ##33-1 through 33-12, 36-1).

When deciding a Rule 12(b)(6) motion, the Court must not consider matters outside the pleadings unless the Court exercises its discretion to convert the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d); see Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (citations omitted).

5

The Court declines to convert the motion.

Conversion is improper when the nonmovant has not "had the opportunity to discover information that is essential to his opposition." Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (quoting Trebor Sportswear Co. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989)). Accordingly, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Id. (collecting cases). "The essential inquiry is whether the [plaintiff] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Malaney v. Elal Isr. Airlines, 331 F. App'x 772, 774 (2d Cir. 2009) (summary order) (quoting Groden v. Random House, Inc., 61 F.3d 1045, 1052–53 (2d Cir. 1995)).

Plaintiff has not had the opportunity to conduct discovery. Moreover, defendants fail to offer any argument why conversion is appropriate. Instead, they note the Court has discretion when deciding whether to convert, and they assert in a footnote that plaintiff "clearly recognized the possibility of conversion," because plaintiff's opposition brief argues against conversion. (See Reply Br. at 1 & n.2).

On this record, the Court finds no indication plaintiff reasonably should have recognized the possibility of conversion in time to have had a reasonable opportunity to oppose defendants' extrinsic submissions, and finds strong indication those submissions caught plaintiff by surprise. Contrary to defendants' contention, the mere fact that plaintiff has opposed conversion does not render conversion appropriate.

The Court thus declines to convert the motion to one for summary judgment.

II.  Extrinsic Material

Defendants nevertheless argue the Court may consider their extrinsic evidentiary submissions even if the instant motion is assessed under Rule 12(b)(6). Specifically, defendants contend certain exhibits appended to the Gyetua-Danquah declaration—plaintiff's termination letter, defendants' employment policies, and unspecified documents defendants describe as "related codes of conduct" (Reply Br. at 2)—are integral to the complaint; that some other extrinsic materials are subject to judicial notice; and that the amended complaint incorporates the Thompson and Carman declarations by reference.

As to all but the District's policy concerning School staff's response to student misconduct, the Court disagrees.

A.  Integral to the Complaint

"A document is integral to the complaint where the plaintiff (1) has 'actual notice' of the document and its information and (2) has 'relied upon the[] documents in framing the complaint.'" McLennon v. City of New York, 171 F. Supp. 3d 69, 89 (E.D.N.Y. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). Reliance is essential: the plaintiff's "mere notice or possession" of a document does not suffice. Chambers v. Time Warner, Inc., 282 F.3d at 153 (citation omitted). Further, an integral document is not properly considered on a motion to dismiss unless the parties clearly do not dispute its authenticity or accuracy, and its relevance clearly is not subject to material factual dispute. DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

Defendants' policy allegedly forbidding teachers from contacting law enforcement during the school day about a crime at the School (Gyetua-Danquah Decl., Ex. D) is integral to the amended complaint. The amended complaint contains numerous references to this policy. (Am.

7

Compl. ¶¶ 8, 13–15, 26–27, 35, 43, 50, 57–58, 60). And it is apparent plaintiff relied on the policy in framing her claims—the amended complaint repeatedly alleges the policy rendered Thompson responsible for alerting law enforcement of Student X's behavior, and that plaintiff's duties as a substitute teacher never included contacting the police during the school day. (See id. ¶¶ 14–15, 26, 43, 50, 55). The policy therefore is clearly relevant to this case. Plaintiff has not disputed the accuracy or authenticity of the version of the policy defendants submitted.

Accordingly, the Court deems integral to the amended complaint only the following: Sections 2 and 3 (entitled "Staff" and "Administration," respectively) of the document entitled "Code of Conduct – Policy #5300." (Gyetua-Danquah Decl., Ex. D).[3]

Next, plaintiff's termination letter (Gyetua-Danquah Decl., Ex. K) is not integral to the amended complaint. The amended complaint does not reference or mention the termination letter, nor does any of plaintiff's filings indicate plaintiff relied on that letter in framing her claims.

Lastly, defendants fail to identify any specific "related codes of conduct" (Reply Br. at 2) they believe are integral to the amended complaint. The Court is unable to assess defendants' argument without knowing which documents defendants believe fall within this ambiguous category. Thus, the Court will not deem integral any other extrinsic material.

B. Judicial Notice

A trial court may judicially notice a fact not subject to reasonable dispute because it is (i) generally known within the court's territorial jurisdiction, or (ii) accurately and readily

---

[3] Curiously, defense counsel submitted four identical copies of this policy as exhibits to the Gyetua-Danquah declaration. (See Gyetua-Danquah Decl., Exs. D, E, F, J).

determinable from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Defendants have not argued any specific extrinsic material satisfies this standard. Instead, defendants refer generally to "an array of information" submitted with defendants' moving papers that defendants claim is "contained in" unspecified public records. (Reply Br. at 3). Defendants also argue they submitted the extrinsic materials "for the purpose of substantiating or explaining references in the record," without offering any indication what those references might be. (See id.).

It is not the Court's job to divine which portions of defendants' three declarations and thirteen supporting exhibits defendants believe are subject to judicial notice, nor will the Court argue defendants' position on their behalf.

Accordingly, the Court will not judicially notice any contents of defendants' extrinsic submissions.

C. Incorporation by Reference

The Court also rejects defendants' frivolous argument that the amended complaint incorporates the Thompson and Carman declarations by reference. (Reply Br. at 2–3).

To incorporate a document by reference, a complaint "must make a clear, definite and substantial reference to the document[]." DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)) (collecting cases). Even "[l]imited quotation" of the document, absent more, does not suffice. United States v. Int'l Longshoremen's Ass'n, 518 F. Supp. 2d 422, 452 (E.D.N.Y. 2007) (quoting Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989)).

Plaintiff's amended complaint makes no reference whatsoever to Thompson's declaration—which is not surprising, since that declaration is dated two weeks after the amended complaint was filed—or to Carman's declaration—which inexplicably has no date, in violation of the statute pursuant to which it was filed. See 28 U.S.C. § 1746.

This insurmountable hurdle notwithstanding, defendants note the amended complaint "references conversations" with Thompson and Carman and describes their conduct and roles at the School. (Reply Br. at 2–3). This argument plainly has no merit.

Defendants further argue that even if the Court assesses the motion under Rule 12(b)(6), the Court need not "passively accept" plaintiff's allegations, and instead should credit defendants' "sworn testimony" over plaintiff's amended complaint. (Reply Br. at 3). This argument ignores Rule 12(d)'s plain language, the legal standard for incorporation by reference, and Rule 12(b)(6)'s fundamental purpose—to test the operative complaint's formal sufficiency "without resolving a contest regarding its substantive merits." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006).

Neither Thompson's nor Carman's declaration is incorporated by reference into the amended complaint.

In sum, the only extrinsic material properly considered for purposes of this motion is the District policy attached as Exhibit D to the Gyetua-Danquah declaration, in the sections labeled "2. Staff" and "3. Administration." All other extrinsic material is excluded.

III.   Free Speech Claims

Defendants argue the amended complaint fails to state a First Amendment retaliation claim against either defendant.

The Court disagrees.

A plaintiff asserting retaliation in violation of the First Amendment plausibly must allege "(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech." Montero v. City of Yonkers, 890 F.3d 386, 394 (2d Cir. 2018) (alterations in original) (quoting Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011)).

Defendants contend plaintiff fails plausibly to allege prongs one and three. The Court addresses those prongs sequentially.

A. First Amendment Protection

Defendants argue plaintiff does not plausibly allege her call to the police is entitled to First Amendment protection, because plaintiff did not speak as a private citizen on a matter of public concern.

The Court disagrees.

The protected status of speech presents a question of law. Connick v. Myers, 461 U.S. 138, 148 n.7 (1983). "[T]o determine whether a public employee's speech is constitutionally protected, courts must determine both [whether] the employee spoke as a private citizen and [whether] the speech at issue addressed a matter of public concern." Montero v. City of Yonkers, 890 F.3d at 393 (citing Garcetti v. Ceballos, 547 U.S. 410, 417 (2006)). If so, courts then must assess whether the speaker's interest, "as a citizen, in commenting upon matters of public concern" is outweighed by the state's interest, "as an employer, in promoting the efficiency of the public services it performs through its employees." Colvin v. Keen, 900 F.3d 63, 75 (2d Cir. 2018) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)). If the state's interest outweighs the individual's, the individual's speech is unprotected. See id.

11

The Court conducts these inquiries in turn.

1. Citizen Speech

When asking whether a public employee spoke as a private citizen, the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of [the] employee's duties, not whether it merely concerns those duties." Montero v. City of Yonkers, 890 F.3d at 398 (quoting Lane v. Franks, 573 U.S. 228, 240 (2014)). To answer that question, courts "examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision."[4] Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012) (citations omitted).

The amended complaint explicitly asserts plaintiff's duties never included reporting Student X's alleged misbehavior to law enforcement during the school day (Am. Compl. ¶¶ 13, 43, 50)—an assertion plausibly supported by District policy, which required staff members to report violative student conduct to a School administrator "at the earliest possible opportunity," and required "[t]he building principal, or his/her designee, [to] notify the appropriate local law enforcement agency" of conduct that is criminal or that "substantially affect[s]" a school's order or security. (Gyetua-Danquah Decl., Ex. D).

Thus, plaintiff plausibly alleges that when she called the police to report Student X's conduct, she was not "perform[ing] the tasks [s]he was paid to perform." Woodlock v. Orange

---

[4] As a non-dispositive factor, courts may consider whether there exists a "civilian analogue" to the plaintiff's speech. Montero v. City of Yonkers, 890 F.3d at 394. A civilian analogue exists if the speech was "made through 'channels available to citizens generally.'" Matthews v. City of New York, 779 F.3d 167, 175 (2d Cir. 2015) (quoting Jackler v. Byrne, 658 F.3d 225, 238 (2d Cir. 2011)). Because an emergency call to the police plainly is such a channel, plaintiff's speech here has a civilian analogue.

Ulster B.O.C.E.S., 281 F. App'x 66, 68 (2d Cir. 2008) (summary order) (alterations in original) (quoting Garcetti v. Ceballos, 547 U.S. at 422). A such, plaintiff sufficiently pleads she spoke with law enforcement as a private citizen. See Montero v. City of Yonkers, 890 F.3d at 398 (plaintiff plausibly alleged he spoke as a private citizen "[b]ecause, based on his pleading, [plaintiff]'s remarks did not fall within his employment responsibilities").

2. Matter of Public Concern

To determine whether plaintiff spoke on a matter of public concern, the Court assesses the form, content, and context of plaintiff's speech in light of the entire record. Montero v. City of Yonkers, 890 F.3d at 399 (quoting Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011)). Speech addresses a matter of public concern when "fairly considered as relating to any matter of political, social, or other concern to the community." Id. (quoting Jackler v. Byrne, 658 F.3d at 236) (citation omitted). Conversely, speech "calculated to redress personal grievances," id. (quoting Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999)), or principally focused on a personal issue "generally related to [the speaker's] own situation," id. (alteration in original) (quoting Jackler v. Byrne, 658 F.3d at 236), does not address a matter of public concern.

Plaintiff sufficiently pleads her call to law enforcement pertained to a matter of public concern. While a report of a potential crime does not ineluctably implicate a matter of public concern, Gorman v. Rensselaer County, 910 F.3d 40, 46 (2d Cir. 2018) (quoting Nagle v. Marron, 663 F.3d 100, 107 (2d Cir. 2011)), here, accepting plaintiff's allegations as true, plaintiff believed Student X both had committed a crime at the School and posed an ongoing threat to her and others' safety. Those matters plausibly relate to a matter of "social" or "other" community concern. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 164

13

(2d Cir. 2006) ("We do not doubt that criminal activity in schools is of 'social' or 'other' concern to communities.").

3. Balance of Interests

In addition to arguing plaintiff did not speak as a private citizen on a matter of public concern, defendants also invoke the Pickering test, contending plaintiff fails plausibly to allege her interest in reporting Student X's conduct to the police outweighs defendants' interest in maintaining school order and discipline. See Pickering v. Bd. of Educ., 391 U.S. at 568.

Pickering's balancing test demands a "fact-sensitive inquiry" generally unsuited for resolution on a motion to dismiss. See Mercer v. Schriro, 2018 WL 4096634, at *15 n.15 (D. Conn. Aug. 28, 2018) (quoting Kelly v. Huntington Union Free Sch. Dist., 675 F. Supp. 2d 283, 298 (E.D.N.Y. 2009)). Here, on this undeveloped record, the Court cannot readily discern every interest at play in this case, or how those interests weigh against one another.

Moreover, the government bears the burden of satisfying the Pickering test. Melzer v. Bd. of Educ., 336 F.3d 185, 197 (2d Cir. 2003) (citations omitted). At this procedural stage, "[t]he Court does not see how the District could [do so], considering that the Court is limited to consideration of the Amended Complaint." Sassone v. Quartararo, 598 F. Supp. 2d 459, 468 (S.D.N.Y. 2009).

Accordingly, defendants' Rule 12(b)(6) motion "is not the proper means" to determine the balance of interests in this case. Cahill v. O'Donnell, 7 F. Supp. 2d 341, 350 (S.D.N.Y. 1998). This issue may be reviewed at summary judgment after the completion of discovery.

B. Causation

Defendants also argue the amended complaint fails plausibly to allege plaintiff's contact with law enforcement during the school day caused plaintiff's termination.

The Court disagrees.

Plaintiff "may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015) (citing Cobb v. Pozzi, 363 F.3d 89, 108 (2d Cir. 2004)). The Second Circuit has no bright-line rule for what constitutes temporal proximity; some courts have deemed as little as three months too long to infer retaliatory motive, while others have found close enough gaps of as long as eight months. See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554–55 (2d Cir. 2001) (collecting cases).

Plaintiff alleges she was terminated five days after reporting Student X to the police. In this case, five days is sufficiently close in time to support an inference of causation. See Littlejohn v. City of New York, 795 F.3d 297, 319–20 (2d Cir. 2015).[5]

For all these reasons, the Court denies defendants' motion to dismiss plaintiff's Section 1983 claims arising from the First Amendment.

IV. Due Process Claim

Defendants argue plaintiff's claim asserting unconstitutional defamation under the Fourteenth Amendment should be dismissed because plaintiff fails plausibly to allege defendants subjected plaintiff to a constitutionally cognizable stigma.

The Court agrees.[6]

---

[5] Defendants also assert plaintiff would have been terminated even absent her allegedly protected speech. In so arguing, defendants rely almost entirely on extrinsic materials not properly considered.

[6] Plaintiff's Fourteenth Amendment-based claim arises from an alleged liberty interest, not a property interest. (See Am. Compl. at 10 (asserting "Fourteenth Amendment Liberty Interest" claim)). Accordingly, defendants' argument that as a probationary teacher, plaintiff had no

15

"[T]he 'liberty' interest protected by the due process clause includes in certain circumstances the right to contest at a hearing public, stigmatizing governmental accusations that impose a substantial disability," O'Neill v. City of Auburn, 23 F.3d 685, 691 (2d Cir. 1994) (collecting cases)—for example, by sufficiently restricting one's "ability to seek and obtain employment," id. (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980)). The legal doctrine protecting this liberty interest is known as "stigma-plus."

To prevail on her stigma-plus claim, plaintiff must show (i) defendants uttered a false statement about plaintiff sufficiently injurious to her reputation (the "stigma"), and (ii) plaintiff suffered "some tangible and material state-imposed burden" imposed without adequate process (the "plus"). Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (quoting Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds by Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003)).

To plead the stigma element, plaintiff plausibly must allege the government made false, defamatory statements that "call into question [her] 'good name, reputation, honor, or integrity,'" Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d at 446 (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)), or "denigrate [her] competence as a professional and impugn [her] professional reputation in such a fashion as to effectively put a significant roadblock in [her] continued ability to practice . . . her profession," Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 631 (2d Cir. 1996) (citing O'Neill v. City of Auburn, 23 F.3d at 692–93).

---

property interest in her employment is of no moment. Cf. Guerra v. Jones, 421 F. App'x 15, 18 (2d Cir. 2011) (summary order) (probationary teacher has cognizable liberty interest "when an alleged government defamation occurs in the course of dismissal from government employment." (quoting Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004))).

The stigma element thus requires "something considerably graver than a charge of failure to perform a particular job, lying within the employee's power to correct." O'Neill v. City of Auburn, 23 F.3d at 692 (emphasis omitted) (quoting Russell v. Hodges, 470 F.2d 212, 217 (2d Cir. 1972)). This is because "[a] prospective subsequent employer, especially for a position requiring professional skills, is far more likely to hire one who has chosen to perform below par in a particular prior engagement than one who was incapable of doing the job." Id. Accordingly, as a matter of law, a statement merely describing a public employee as "perform[ing] a job poorly" cannot sustain a stigma-plus claim. Dingle v. City of New York, 728 F. Supp. 2d 332, 351 (S.D.N.Y. 2010) (alteration in original) (citing O'Neill v. City of Auburn, 23 F.3d at 692); see Piccoli v. Yonkers Bd. of Educ., 2009 WL 4794130, at *3 (S.D.N.Y. Dec. 11, 2009) (collecting cases).

Here, the amended complaint does not accuse defendants of falsely questioning plaintiff's integrity, honor, reputation, or good name, or of bespattering plaintiff's professional reputation in a manner "so damaging" as to "seriously . . . hinder [plaintiff] in finding work in [her] field." Empire Transit Mix, Inc. v. Giuliani, 37 F. Supp. 2d 331, 337 (S.D.N.Y. 1999) (citations omitted). Rather, plaintiff alleges only that her personnel file contains unspecified documentation of an allegation that she was terminated for ineffectiveness. This is precisely the type of "conclusory or nondescript unsatisfactory rating or negative report [that], by itself, could almost never support a 'stigma plus' allegation." Adams v. N.Y. State Educ. Dep't, 752 F. Supp. 2d 420, 449 (S.D.N.Y. 2010) (citations omitted).

For this reason, plaintiff's stigma-plus claim is dismissed.

V.	Qualified Immunity

Finally, defendants argue plaintiff's claim against Thompson in his individual capacity should be dismissed on grounds of qualified immunity.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity broadly protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015) (summary order).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)).

Plaintiff sufficiently alleges Thompson violated her First Amendment rights, which were clearly established at the time, and that it was not on its face reasonable for defendants to believe they lawfully could violate those rights. Accordingly, dismissing plaintiff's retaliation claim against Thompson on grounds of qualified immunity is inappropriate at this early stage of the case. This issue may be reviewed at summary judgment after the completion of discovery.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's First Amendment retaliation claims shall proceed.

By January 11, 2019, defendants shall file an answer to plaintiff's remaining claims.

The Clerk is instructed to terminate the motion. (Doc. #31).

Dated: December 28, 2018
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge